CC-96-318

En el Tribunal Supremo de Puerto Rico

| ANDRES RAMOS RIVERA<br><br>    Peticionario<br><br>    V.<br><br>ESTADO LIBRE ASOCIADO DE<br>P.R. Y OTROS<br><br><br>    Recurridos | Cetiorari<br><br>99TSPR57 |

Número del Caso: CC-96-318

Abogados de la Parte Peticionaria: LCDO. SIGFRIDO A. IRIZARRY SEMIDEI

Abogados de la Parte Recurrida:
LCDA. EDDA SERRANO BLASINI
SUBPROCURADORA GENERAL

ROSANA MARQUEZ VALENCIA
PROCURADORA GENERAL AUXILIAR

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, Sala de San Juan

Juez del Tribunal de Primera Instancia: Hon. Salim Chaar Padin

Tribunal de circuito de Apelaciones: Circuito Regional de San Juan

Juez Ponente: Hon. Rossy García

Panel Integrado por: Pres. Juez Rossy García y los Jueces Aponte
Jiménez y Negroni Cintrón

Fecha: 4/16/1999

Materia:

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Andrés Ramos Rivera
   Peticionario

        v.

 Estado Libre Asociado de
 P.R. y otros                    CC-96-318

   Recurridos

SENTENCIA

San Juan, Puerto Rico, a 16 de abril de 1999.

El 31 de mayo de 1984 el Sr. Andrés Ramos Rivera, demandante peticionario, solicitó una licencia militar sin sueldo a su patrono, la Comisión de Servicio Público (en adelante, Comisión) para prestar servicios militares en la Guardia Nacional de Puerto Rico, luego de ser activado conforme a las órdenes militares emitidas al efecto en mayo de 1984.

La Comisión concedió la licencia solicitada el 22 de junio de 1984. La misma se extendió desde el 1ro de julio de 1984 hasta el 6 de mayo de 1987. Expirada la licencia, el señor Ramos Rivera se reintegró a su puesto de Auditor en la Comisión.

El 30 de octubre de 1987 el señor Ramos Rivera solicitó a la Administración de los Sistemas de Retiro del Gobierno y la Judicatura (en adelante, la Administración) que le acreditara el periodo que estuvo en el servicio militar, tres (3) años y tres (3) meses, para efectos de retiro del Gobierno del Estado Libre Asociado (en adelante E.L.A.). El señor Ramos Rivera deseaba jubilarse el 30 de diciembre de 1987.

El 11 de agosto de 1987, la Administración le informó al señor Ramos Rivera que los servicios militares por él prestados entre 1984 y 1987 no eran acreditables para propósitos de retiro. Razonó que, de acuerdo con las disposiciones de la Carta de Derechos del Veterano Puertorriqueño, Ley Núm. 13 de 2 de octubre de 1980, 29 L.P.R.A sec. 811 y ss, los servicios prestados por el señor Ramos Rivera en la Reserva de la Guardia Nacional no constituían servicio activo en las Fuerzas Armadas.[1]

Inconforme, el señor Ramos Rivera solicitó la reconsideración de dicho dictamen el 24 de mayo de 1989.[2] La Administración acogió el escrito y el 10 de octubre de 1990 emitió una resolución mediante la

---

[1] La Administración basó su determinación en el Art. 4(C)(a) de la Carta de Derechos del Veterano, supra, 29 L.P.R.A. sec. 814, el cual disponía, en lo pertinente, que:

> Todo veterano que reingrese o que entre por primera vez al servicio del Estado Libre Asociado, sus agencias o instrumentalidades, corporaciones públicas o cuasi públicas o de los gobiernos municipales, y que pase a ser miembro participante de cualquiera de los sistemas o fondos de retiro gubernamentales, tendrá derecho, en cualquier momento en que lo solicite, a que se le acredite a los fines de retiro, todo el tiempo que hubiese estado en servicio activo en las fuerzas armadas, siempre que pague al Sistema de Retiro las aportaciones que correspondan a base de los sueldos percibidos al ingresar en las fuerzas armadas y conforme a las disposiciones de la ley de retiro pertinente.

El artículo citado ha sido enmendado en diversas ocasiones. Véase la Ley Núm. 80 de 13 de julio de 1988, enmienda realizada en virtud de nuestra decisión en Guardiola Pérez v. Morán, 114 D.P.R. 477 (1983). En éste resolvimos que el servicio activo acreditable para fines de retiro cubre tanto el servicio militar prestado durante tiempos de guerra como el prestado en tiempos de paz. Véase, además, la Ley Núm. 10 de 21 de mayo de 1992.

[2] El señor Ramos Rivera presentó el recurso de reconsideración nueve (9) meses después de la determinación denegatoria de la Administración.

cual confirmó su decisión previa. El 9 de noviembre de 1990, el señor Ramos Rivera presentó una apelación ante la Junta de Síndicos de la Administración de los Sistemas de Retiro (en adelante, Junta de Síndicos).

Luego de celebrada la vista, la Junta de Síndicos, mediante resolución emitida el 25 de marzo de 1992 y archivada el 9 de abril de 1992, resolvió que la reclamación del señor Ramos Rivera era académica pues él estaba recibiendo su pensión por retiro desde el 31 de enero de 1991. Indicó, además, que le correspondía a los tribunales adjudicar y pasar juicio sobre la reclamación de los alegados daños que sufrió el señor Ramos Rivera como consecuencia de la no acreditación de los servicios militares. En reconsideración, la Junta
 de Síndicos confirmó su determinación original y apercibió al señor Ramos Rivera de su derecho a solicitar la revisión de la misma ante los tribunales.

De otra parte, el 29 de enero de 1992, esto es, alrededor de dos (2) meses antes de que la Junta de Síndicos emitiera su determinación, el señor Ramos Rivera presentó una acción sobre incumplimiento de contrato y daños y perjuicios ante el Tribunal de Primera Instancia, Sala Superior de San Juan contra el E.L.A., el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades (Sistema) y la Administración. Alegó que entre él y los demandados existía una relación contractual mediante la cual él se obligó a aportar periódicamente al Sistema ciertas cantidades de dinero. Los demandados, por su parte, se obligaron a pagarle una pensión por retiro. En virtud de dicha relación contractual, el señor Ramos Rivera reclamó los alegados daños y perjuicios que le ocasionaron los demandados al no acreditarle para fines de retiro el periodo que estuvo en la Guardia Nacional.

El 23 de marzo de 1995, día de la vista en el caso de daños y perjuicios, los demandados y el señor Ramos Rivera estipularon que el periodo de tiempo que éste sirvió en la Guardia Nacional constituía

servicio activo en las Fuerzas Armadas y, por lo tanto, era acreditable para fines de la pensión por retiro. Las partes limitaron la controversia a si el señor Ramos Rivera sufrió daños como consecuencia de la negativa de la Administración a computarle dicho periodo y la cuantía de los mismos.

El 16 de octubre de 1995, el foro de instancia desestimó la demanda. Expresó que, aunque el señor Ramos Rivera tuviese una relación contractual con el E.L.A., no tenía legitimación activa para reclamar daños. Razonó que la Junta de Síndicos había interpretado correctamente el derecho vigente al no computarle el periodo que estuvo en la Guardia Nacional para efectos de su retiro. En consecuencia, la estipulación realizada por las partes era contraria a derecho y no era necesario hacer una determinación en cuanto a los daños.

Oportunamente, el señor Ramos Rivera presentó un recurso de apelación ante el Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan (en adelante, Tribunal de Circuito).[3] Dicho tribunal confirmó la sentencia desestimatoria del foro de instancia, aunque por el fundamento de que el apelante no agotó los remedios administrativos. Inconforme, el señor Ramos Rivera acudió ante nos con los siguientes señalamientos de error:

> Primer error: Erró el Tribunal de Circuito de Apelaciones al resolver que procedía la desestimación de la demanda presentada por el peticionario [señor Ramos Rivera] por no agotar los remedios administrativos.

> Segundo error: Erró el Tribunal de Circuito al confirmar la sentencia dictada por el Tribunal de Primera Instancia.

---

[3] El señor Ramos Rivera le imputó al foro de instancia haber incurrido en los siguientes errores:
1. Cometió error el honorable tribunal de instancia al declarar sin lugar la demanda, concluyendo que el periodo de servicio militar activo que el demandante-apelante [señor Ramos Rivera] completó entre el 7 de mayo de 1984 y 16 de septiembre de 1987 no era acreditable para propósitos de su retiro como empleado del E.L.A. y al dejar sin efecto una estipulación de ambas partes en el sentido de que dicho periodo de servicio sí era acreditable.
2. Cometió error dicho tribunal al concluir que el demandante no tiene capacidad ("standing") para demandar a los apelados.

Procederemos a discutir, en primera instancia, el segundo señalamiento de error. El señor Ramos Rivera alegó, en síntesis, que de acuerdo con las disposiciones del Art. 4 de la Carta de Derechos del Veterano, supra, el periodo de tiempo que estuvo en la Guardia Nacional constituía servicio activo en las Fuerzas Armadas y, por ende, era acreditable para propósitos de su jubilación del E.L.A. Señaló, además, que la discusión minuciosa ante el foro de instancia de las disposiciones de ley aplicables se hizo innecesaria puesto que ambas partes habían estipulado que los años de servicio en controversia eran acreditables, sin que el tribunal expresara reparo alguno.

II

La Ley Núm. 447 de 15 de mayo de 1951, 3 L.P.R.A. sec. 761 y ss, creó un sistema de retiro y beneficios denominado Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades. Los beneficios establecidos por la referida ley están disponibles para los funcionarios y empleados del E.L.A., los funcionarios y empleados de las empresas públicas, los miembros de la Asamblea Legislativa y los Alcaldes, entre otros.

La Ley Núm. 447, supra, establece las condiciones que los participantes del Sistema tienen que cumplir para tener derecho a percibir una anualidad por retiro. Ley Núm. 447, supra, 3 L.P.R.A. sec. 766. Dispone, además, los servicios que son acreditables para efectos de retiro, entre éstos, los prestados en la Asociación de Maestros, los prestados por Alcaldes y los prestados en las Fuerzas Armadas de Estados Unidos.[4]

---

[4] El Art. 5 de dicha ley, 3 L.P.R.A sec. 765(d), según enmendado por la Ley Núm. 95 de 19 de junio de 1968, dispone lo siguiente:

（d) A todo miembro del Sistema se le abonará como servicio acreditable para cualquiera y todos los fines de esta Ley todo servicio militar o naval prestado a los Estados Unidos de América durante la primera o la segunda guerra mundial o durante cualquier conflicto armado si el participante era empleado en la fecha de su ingreso en el servicio militar o naval, fuere reemplazado dentro de un periodo de noventa (90) días a partir de su licenciamiento incondicionalmente de dicho servicio militar o naval, y no por motivo deshonroso

En relación con el aspecto organizacional y administrativo del Sistema, éste se considera un fideicomiso. La responsabilidad de poner en vigor las disposiciones de la Ley Núm. 447, supra, corresponde a la Junta de Síndicos. Para poder realizar dicha función, ésta debe nombrar un Administrador del Sistema. El Administrador, por su parte, tiene a su cargo diversas funciones y facultades, entre éstas, la adjudicación de las controversias que puedan surgir en relación con reclamaciones de beneficios de los miembros del Sistema.

La Junta de Síndicos tiene facultad para resolver en apelación las controversias surgidas entre el Administrador y los participantes del Sistema. Ley Núm. 447, supra, sec. 776(d). Tras la celebración de una audiencia y de acuerdo con la prueba presentada, la Junta de Síndicos puede sostener, modificar o revocar la determinación del Administrador.

En diversas ocasiones hemos expresado que el derecho de los funcionarios o empleados públicos a percibir la pensión de retiro por años de servicios:

> tiene un respetable contenido ético y moral y constituye un seguro de dignidad para el hombre o la mujer que habiendo dedicado al servicio público sus años fecundos, no debe encontrarse en la etapa final de su vida en el desamparo, o convertido en carga de parientes o del Estado. Bayrón Toro v. Serra, 119 D.P.R. 605, 616 (1987).

Por dicha razón hemos resuelto expresamente que los participantes de un sistema de retiro del gobierno tienen un derecho adquirido de

---

alguno, siempre que pague al Sistema las aportaciones que corresponda a base del sueldo que percibía al tiempo de ingresar en las Fuerzas Armadas.

Será servicio acreditable también todo servicio prestado en las Fuerzas Armadas de los Estados Unidos de América durante la Primera o la Segunda Guerra Mundial o durante cualquier conflicto armado si el peticionario (a) ha prestado durante diez (10) o más años de servicio en el Gobierno de Puerto Rico; (b) es participante del Sistema al momento de solicitar la acreditación, y (c) hubiere obtenido su licenciamiento incondicional y no por motivo deshonroso alguno, siempre que pague al Sistema las aportaciones que correspondan a base de los sueldos, percibidos durante dichos servicios en las Fuerzas Armadas...

Dicho artículo fue enmendado posteriormente por la Ley Núm. 10 de 21 de mayo de 1992.

naturaleza contractual a percibir una anualidad por concepto de jubilación. Dicho derecho surge cuando un empleado ingresa al sistema, independientemente de que la participación en el mismo sea obligatoria o voluntaria. Bayrón Toro v. Serra, supra, pág. 618.

En vista de la naturaleza contractual de la pensión por retiro, una vez un funcionario se jubila, la misma no está sujeta a cambios ni a menoscabos, a tenor con el Art. II, Sec. 7 de la Constitución del Estado Libre Asociado de Puerto Rico, el cual impide al gobierno menoscabar las obligaciones contractuales.[5] Bayrón Toro v. Serra, supra, pág. 618.

Según expresáramos anteriormente, el señor Ramos Rivera demandó al E.L.A., al Sistema y a la Administración en daños y perjuicios por su alegado incumplimiento contractual al negarse a computar los servicios por él prestados en la Reserva de la Guardia Nacional para efectos de su jubilación. En el procedimiento judicial, las partes estipularon específicamente que el periodo de tiempo que el demandante estuvo en la Guardia Nacional era acreditable por ser servicio activo en las Fuerzas Armadas. En consecuencia, la controversia quedó limitada a determinar si el señor Ramos Rivera sufrió daños. Cabe señalar, además, que tanto en el informe sobre conferencia preliminar entre abogados, como el día de la vista del caso en su fondo, las partes hicieron constar dicho convenio.

Así pues, el día de la vista el demandante se limitó a presentar prueba sobre los alegados daños, partiendo de la base de que el tribunal, al no objetar ni cuestionar la estipulación en momento alguno, había aprobado tácitamente que, en efecto, los servicios eran

---

[5] La Sec. 7 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico dispone:
Se reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad y al disfrute de la propiedad. No existirá la pena de muerte. Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. No se aprobarán leyes que menoscaben las obligaciones contractuales. Las leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo. (Enfasis nuestro.)

acreditables.[6]   No obstante, sorpresivamente, el foro de instancia desestimó la demanda por el fundamento de que la referida estipulación era contraria a derecho y, por ende, nula.

Para dilucidar si el foro de instancia actuó correctamente al desestimar la demanda presentada por el señor Ramos Rivera es menester determinar la validez y el alcance que tienen en nuestra jurisdicción las estipulaciones de las partes.

La estipulación constituye una admisión judicial que implica un desistimiento formal de cualquier contención contraria a ella.  Existen diversas clases de estipulaciones: (i) las que constituyen admisiones de hechos y dispensan del requisito de probar tales hechos; (ii) las que reconocen derechos y tienen el alcance de una adjudicación respecto de tales derechos; y (iii) las que proponen determinado curso de acción, por ejemplo, que se celebre una conferencia con antelación al juicio o que se someta un asunto a la consideración de un comisionado especial.  P.R. Glass Corp. v. Trib. Superior, 103 D.P.R. 223, 230 (1975).

Las estipulaciones tienen como finalidad evitar dilaciones, inconvenientes y gastos y su uso debe alentarse para lograr el propósito de hacer justicia rápida y económica.  Deben interpretarse liberalmente, de forma compatible con la intención de las partes y el propósito de hacer justicia.  Ahora bien, si existe duda en cuanto a la intención de las partes, se debe adoptar la contención que sea más favorable para la persona a cuyo favor se hizo la estipulación.  P.R. Glass Corp. v. Trib. Superior, supra, pág. 231.

En Coll v. Picó, 82 D.P.R. 27 (1960), resolvimos que en lo que se refiere a los hechos y a la prueba, las estipulaciones obligan tanto a las partes como al juez.  Sin embargo, expresamos que frente a los

---

[6] El punto número tres (3) de la minuta de la vista celebrada en el foro de instancia dispone:  "Se estipuló que el período de tiempo que el demandante estuvo en la Guardia Nacional es acreditable por ser trabajo o servicio activo en las Fuerzas Armadas".
    Más adelante, se indica que el caso quedaría sometido una vez se sometieran dicha estipulación y un informe pericial.

preceptos legales y su interpretación, el juez se halla en una posición muy distinta puesto que tiene que buscar e interpretar la norma jurídica aplicable a la situación que se le plantea.  Cabe señalar que este caso versaba sobre la interpretación de una ley contributiva.

Sin embargo, posteriormente y en reiteradas ocasiones hemos resuelto que, como regla general, los jueces aceptarán los convenios y estipulaciones a los que lleguen las partes para finalizar un pleito o un incidente dentro del mismo, cuando éstos no atenten contra la moral o el orden público.  Negrón Rivera y Bonilla, *Ex parte*, 120 D.P.R. 61, 76 (1987); P.R. Glass Corp. v. Trib. Superior, supra, pág. 231.  Una vez suscrita por las partes y aceptada por el tribunal, la estipulación que finaliza un pleito o como en este caso, un incidente dentro del mismo, **constituye un contrato de transacción que obliga a las partes y tiene efecto de cosa juzgada.**  Rodríguez v. Zayas Martínez, Op. de 21 de mayo de 1993, 133 D.P.R. __ (1993), 93 J.T.S. 75; Magee v. Alberro, 126 D.P.R. 228, 232 (1990);  Negrón Rivera y Bonilla, *Ex parte*, supra, pág. 74; Sucn. Román v. Shelga Corp., 111 D.P.R. 782 (1981); P.R. Glass Corp. v. Trib. Superior, supra, pág. 231.  Véase además, a modo ilustrativo, Crespo v. Autoridad de Carreteras, Sent. de 9 de septiembre de 1994, 136 D.P.R. ___ (1994), 94 J.T.S. 120.  Al expresarnos de esa forma, no hemos establecido distinciones entre estipulaciones de hechos o aquéllas mediante las cuales se reconocen derechos.  De conformidad con la regla general, para que el tribunal acepte un convenio realizado por las partes, basta con que éste ponga fin al pleito o a un incidente en el mismo, independientemente de si mediante dicho acuerdo se establecen hechos o se reconocen derechos. No obstante, a manera de excepción y dado el carácter sui generis de los casos de familia, cuando se trata de estipulaciones relacionadas con pensiones alimentarias, los jueces tienen el deber de asegurarse de que éstas satisfacen adecuadamente las necesidades de los menores. Magee v. Alberro, supra, pág. 232; Negrón Rivera y Bonilla, *Ex parte*, supra, pág. 76.

Según expresáramos anteriormente, una vez aprobada por el tribunal, la estipulación mediante la cual se finaliza un pleito o un incidente dentro del mismo constituye una transacción. No obstante, una estipulación no significa, necesariamente, la existencia de una transacción. P.R. Glass Corp. v. Trib. Superior, supra, pág. 231.

La transacción, por su parte, es un contrato con el cual los litigantes, mediante recíprocas concesiones, evitan la provocación de un pleito o ponen fin al que había comenzado. Art. 1709 del Código Civil, 31 L.P.R.A. 4821[7]; Neca Mortgage Corp. v. A & W Developers S.E., Op. de 7 de febrero de 1995, 137 D.P.R. __ (1995), 95 J.T.S. 10. En otras palabras, para que surja la figura de la transacción es preciso que exista una situación de controversia entre dos o más personas y que éstas se hagan concesiones recíprocas. Neca Mortgage Corp. v. A & W Developers S.E., supra, pág. 603.

El contrato de transacción está regulado expresamente en el Código Civil, 31 L.P.R.A. secs. 4821-30, y en lo que no sea incompatible con las normas que lo regulan, aplican las reglas generales sobre la interpretación de contratos. Negrón Rivera y Bonilla, Ex parte, supra, págs. 74-75; Citibank v. Dependable Ins., 121 D.P.R. 503, 516 (1988).

---

[7] El Art. 1709 del Código Civil, supra, dispone lo siguiente:

> La transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado.

> Existen dos clases de contratos de transacción: el judicial y el extrajudicial. Si antes de comenzar un pleito, las partes acuerdan eliminar la controversia mediante un acuerdo, estamos ante un contrato de transacción extrajudicial. También existe un contrato de transacción extrajudicial cuando estando aún el pleito pendiente, las partes acuerdan una transacción sin la intervención del tribunal. En cambio, si la controversia degenera en un pleito y luego de éste haber comenzado, las partes acuerdan eliminarla y solicitan incorporar el acuerdo al proceso judicial en curso, estamos ante un contrato de transacción judicial que tiene el efecto de finalizar el pleito. Neca Mortgage Corp. v. A & W Developers, supra, pág. 604.

La transacción de una causa de acción entre los litigantes debe responder a la voluntad de las partes, ya que, **"[s]alvo cuando la ley expresamente lo prohibe o lo limita, los derechos son renunciables y transigibles"**. (Enfasis nuestro.) Ponce Gas Service Corp. v. J.R.T., 104 D.P.R. 698, 702 (1976). Las partes están impedidas de transar una causa de acción cuando ello se prohiba expresamente mediante una disposición legal al efecto, ya que "[l]as limitaciones a la libertad, cuando por necesidad existan, deben ser expresas. Jamás deben ser tácitas..." Ponce Gas Service Corp. v. J.R.T., supra, págs. 702-703. A manera de ejemplo, el Art. 1713 del Código Civil, 31 L.P.R.A. sec. 4825, prohibe que se realicen transacciones sobre el estado civil de las personas y sobre alimentos futuros.[8]

Al determinar el alcance de las transacciones, hemos resuelto que de conformidad con el Art. 1714 del Código Civil, 31 L.P.R.A. sec. 4826, éstas deben interpretarse restrictivamente, ya que "[l]a transacción no comprende sino los objetos expresamente determinados en ella o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma".

Es menester señalar, además, que **para efectos de la validez de una transacción es impertinente que ésta se hubiera hecho conforme a derecho, ya que, de lo contrario, constituiría "un acto inútil y que a**

---

[8] El Art. 1713 del Código Civil, supra, dispone lo siguiente: "No se puede transigir sobre el estado civil de las personas, ni sobre cuestiones matrimoniales, ni sobre alimentos futuros".

**nadie aprovecha"**. (Enfasis suplido.) Citibank v. Dependable Ins., supra, pág. 516 , citando con aprobación Matienzo v. González, 26 D.P.R. 457, 474 (1918). Una transacción está viciada de nulidad y puede impugnarse cuando en el consentimiento prestado por una de las partes media error, dolo, violencia, intimidación o falsedad de documentos. Art. 1716 del Código Civil, 31 L.P.R.A. sec. 4828; Febus v. MARPE, Op. de 25 de febrero de 1994, 135 D.P.R. ___ (1994), 94 J.T.S. 19. Las transacciones están viciadas de nulidad, además, cuando versan sobre un asunto o causa de acción sobre el que la ley prohibe transar.

Por último, y según expresáramos anteriormente, la transacción tiene efecto de cosa juzgada. Ello significa que las partes tienen que considerar los puntos discutidos como definitivamente resueltos ya que, de no ser así, la transacción perdería su razón de ser y existir. Hemos expresado, además, que "[l]a cosa juzgada de la transacción [a diferencia de la cosa juzgada producida por la sentencia]... quiere decir que el juez viene obligado a tener en cuenta la decisión de las partes y a no contradecirla, aunque la crea injusta" (Enfasis omitido.) Citibank v. Dependable Ins., supra, pág. 516.

Ahora bien, a pesar de que el contrato de transacción tiene efecto de cosa juzgada, esto no opera para impedir que el juzgador interprete la extensión y aplicación del mismo al pleito en el cual se levanta como defensa. Sucn. Román v. Shelga Corp., supra, pág. 787.

Recapitulando, las estipulaciones son favorecidas judicialmente y como norma general, los jueces deben aprobar los convenios a los que lleguen los litigantes ya sea para finalizar un pleito o un incidente dentro del mismo. Tras la aprobación de la estipulación por el tribunal, ésta constituye un contrato de transacción que obliga a las partes, claro está, si están presentes los requisitos esenciales del contrato de transacción, es decir, si existe una relación jurídica incierta y las partes se hacen concesiones recíprocas.

En vista de que una vez aprobada por el tribunal, la estipulación que finaliza un pleito o un incidente dentro del mismo tiene el alcance de una transacción y de que la validez de una transacción no depende, necesariamente, de que la misma sea realizada de acuerdo a derecho, resulta ineludible concluir que **las estipulaciones tampoco tienen que ser compatibles con las normas jurídicas, aún si mediante las mismas se reconocen derechos e independientemente de que el juzgador esté en desacuerdo con lo estipulado.** Resolver lo contrario e imponer a los litigantes la obligación de estipular de conformidad con el derecho vigente o de la misma manera en que lo haría el tribunal, convertiría las estipulaciones en actos inútiles, desalentaría su uso y destruiría su propósito fundamental de evitar dilaciones, inconvenientes, gastos y hacer justicia rápida y económica. Sin embargo, en vista de que una estipulación no tiene que concordar con las normas jurídicas vigentes, la misma no tendrá autoridad de cosa juzgada en una segunda acción que verse sobre un asunto o controversia ajeno al que fue objeto de estipulación.

Al aplicar las normas anteriormente esbozadas al caso ante nos, resolvemos que el tribunal de instancia erró al desestimar la demanda presentada por el señor Ramos Rivera. Tras un examen de hechos y de los escritos de las partes, no hemos encontrado fundamento alguno que afectara la validez de la estipulación realizada por las partes y, por ende, que justificara que dicho tribunal se desviara de la norma general y se negara a aprobarla. Los litigantes en el caso ante nos decidieron poner fin a un incidente dentro del pleito con una estipulación mediante la cual se reconocía la existencia de un derecho: el derecho del señor Rivera Ramos a que se le acreditasen los servicios prestados en la Guardia Nacional para fines de su jubilación del E.L.A. La referida estipulación se realizó voluntariamente, de los autos no surge que en el consentimiento prestado por las partes haya mediado dolo, error, violencia, intimidación o falsificación de documentos. Dicha estipulación no es contraria a la moral ni al orden público. Es

menester señalar, además, que ninguna de las partes impugnó la estipulación durante la vista del caso. La validez del convenio no dependía de que el foro de instancia, al interpretar las disposiciones de ley aplicables a la controversia de autos, hubiese estado de acuerdo con lo estipulado. Por lo tanto, el tribunal debió resolver de conformidad con la regla general y aprobar el convenio que voluntariamente realizaron los litigantes, sin entrar en los méritos del mismo. Una vez aprobada por el foro de instancia, la estipulación tendría el alcance de una adjudicación respecto a la existencia del derecho del señor Ramos Rivera y sólo restaba determinar si éste sufrió daños y la cuantía de los mismos.

En virtud de lo anterior, resulta forzoso concluir que el Tribunal de Circuito erró al confirmar la sentencia desestimatoria emitida por el foro de instancia.[9]

Por los fundamentos antes expuestos, revocamos la sentencia dictada por el Tribunal de Circuito de Apelaciones y devolvemos el caso al foro de instancia para que continúe con los procedimientos.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García disiente con opinión escrita. El Juez Asociado señor Hernández Denton disiente sin opinión escrita. El Juez Asociado señor Rebollo López no interviene. El Juez Asociado señor Fuster Berlingeri no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

---

[9] Dada la conclusión a que llegamos, no es preciso expresarnos en torno al primer señalamiento de error.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Andrés Ramos Rivera


    Demandante-Peticionario


       v.                       CC-96-318     Certiorari


Estado Libre Asociado de

Puerto Rico y otros


    Demandados-Recurridos


Opinión Disidente del Juez Asociado señor Negrón García


San Juan, Puerto Rico, a 16 de abril de 1999


I

**Función medular y atributo fundamental de los jueces -consustancial con el principio de independencia judicial- es interpretar las leyes.**

En <u>Coll</u> v. <u>Picó</u>, 82 D.P.R. 27, 36-37 (1960) expusimos este postulado así: "**[N]inguna estipulación o admisión de las partes puede privar a un tribunal de su facultad de interpretar la ley**. Por lo que se refiere a los hechos y a la prueba, el principio es que las estipulaciones de ordinario obligan tanto a las partes como al juez. **No obstante, frente a las normas jurídicas y a su interpretación el juez se halla en una posición muy distinta. Como el tribunal es por definición un**

**órgano jurisdiccional conocedor del derecho y de su técnica, tiene la ineludible obligación de buscar e interpretar la norma jurídica aplicable a la situación concreta que se le plantea**. Además, existen obvias razones de orden público que impiden a los tribunales dictar fallos basados en normas erróneas de derecho, aunque éstas surjan de una estipulación suscrita por las partes. Síguese de aquí la consecuencia procesal de que las partes no vinculan al juez mediante las alegaciones, admisiones o estipulaciones que formulen sobre la existencia o interpretación de determinados preceptos de ley. **O sea, que la función de hallar el derecho es privativa del juez y en virtud de esa facultad el tribunal está en libertad de aplicar la norma que estime pertinente y adecuada, aunque sea separándose de las alegaciones, admisiones o acuerdos de los litigantes."** (Citas omitidas y énfasis nuestro).

Con visión, desde ese momento este Tribunal por voz del entonces Juez Asociado, Sr. Lino Saldaña, invitaba a examinar **las limitaciones que el orden jurídico impone a una transacción, cuando su efecto es dar por terminado un pleito con sentencia**. Escolio 2, pág. 38. Precisamente este recurso se proyecta en la impermisible modalidad de pretender que por sentencia un tribunal refrende, vía transacción, una interpretación contraria a la ley. Elaboremos.

II

Sabido que una estipulación puede constituir un contrato de transacción vinculante entre las partes, con efecto de cosa juzgada. Lausell Marxuach v. Díaz de Yánez, 103 D.P.R. 533 (1975); Canino v. Bellaflores, 78 D.P.R. 778 (1955). D. Espín Cánovas, Manual de Derecho Civil Español, V. III, Bosch, 1985. Sin embargo, **tiene un límite: si se le somete al tribunal, no puede impedir que éste pase juicio sobre su validez o legalidad. Lo contrario significaría inducirlo a dictar sentencias nulas, contrarias a las leyes, a las que como jueces debemos sujeción.**

La razón es sencilla: como contrato, la validez de toda transacción está sujeta a que concurran consentimiento, objeto y causa. Así también, la transacción no puede -so pena de nulidad- ser contraria a **la ley,** la

moral y el orden público. Art. 1207, Código Civil, 31 L.P.R.A. sec. 3372. Sobre el extremo de la nulidad, Luna Serrano nos dice:

"Parece claro que a pesar del diseño negocial dispositivo en que la transacción consiste, **no podrá ser objeto de la misma la relación material que se intenta[] constituir con el negocio ilícito**..., ello no sólo porque la transacción sobre los efectos del negocio nulo sería una transacción sin objeto verdadero, sino ficticio, puesto que **los actos realizados de manera contraria a las normas imperativas y a las prohibitivas son nulos de pleno derecho,..., sobre todo, porque entonces sería la transacción un negocio en fraude de Ley**..." D. Agustín Luna Serrano, La Ineficacia de la Transacción, 1980, págs. 123-124. (Énfasis nuestro).

No podemos pues, suscribir la tesis mayoritaria que dictamina que la estipulación de las partes –período de licencia acreditable–, constituyó un contrato de transacción obligatorio no sólo inter partes, sino a los tribunales.[10] No es suficiente fundamento la determinación mayoritaria de que es impertinente, para efectos de la validez de una transacción, que ésta se haga conforme a **derecho**. No cabe el argumento de que, de lo contrario, las transacciones serían actos inútiles, que a nadie aprovecharían. **Es un grave error concluir que las transacciones, al igual**

---

[10] Luego de que Ramos Rivera incoara demanda por incumplimiento de contrato contra el E.L.A., **estipularon que el período de licencia militar sin sueldo, era acreditable para fines de la pensión de retiro, limitando la controversia a la cuantía de daños a resarcirse.**

No obstante, el ilustrado foro de instancia, Sala Superior de San Juan (Hon. Salim Chaar Padín), desestimó la demanda por entender que las determinaciones de la Administración y la Junta fueron correctas y la **estipulación entre las partes era contraria a la Ley** y no le obligaba. El reputado Tribunal de Circuito confirmó por el fundamento de que no se agotaron los remedios administrativos.

**que las estipulaciones que pretenden ser elevadas a una sentencia, no tienen que ser compatibles con las normas jurídicas, independientemente de que el juzgador esté en desacuerdo con lo estipulado. El ámbito permisible se circunscribe a los derechos renunciables, no a obligar a un Juez a realizar actos contrarios a las leyes.**

**La interpretación mayoritaria, inintencionalmente promueve una peligrosa norma que da al traste con el principio de legalidad que debe amparar todas las decisiones de los tribunales.**

En el caso de autos, no cabe duda que las partes intentaron terminar el pleito mediante una transacción por

Sentencia judicial. Dicha intención estaba limitada por los requisitos para la validez de los contratos. No podían actuar contrario a la **ley,** la moral y el orden público, y convertir al Tribunal en cómplice de su ilegalidad.

**Rehusamos, bajo el ropaje de una transacción, exigirle a un tribunal violar una disposición de ley. La psico-dinámica judicial, por mandato constitucional, prohíbe a los tribunales ignorar y, mucho menos avalar, actuaciones ilegales de las partes.**

ANTONIO S. NEGRON GARCIA
Juez Asociado