Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| CARMEN VIGO RODRÍGUEZ<br><br>Apelada<br><br>v.<br><br>ANA MARGARITA DANIELS GIREAUD Y OTROS<br><br>Apelantes | KLAN202400694 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: SJ2021CV08325<br><br>Sobre: Sentencia Declaratoria y Nulidad de Testamento |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de septiembre de 2024.

El Tribunal de Primera Instancia ("TPI"), por la vía sumaria, adjudicó los méritos de una acción de impugnación de testamento presentada por la viuda de un heredero quien falleció varios años después de la testadora. Según se explica en detalle a continuación, concluimos que el récord no le permitía al TPI determinar, en esta etapa, si, antes de fallecer, el heredero consintió a una determinada forma de dividir los bienes de la causante, por lo cual tampoco estaba en posición de determinar si la demandante realmente heredó una causa de acción o si la misma se extinguió antes de fallecer el heredero.

I.

En diciembre de 2021, la señora Carmen Vigo Rodríguez (la "Demandante" o la "Viuda del Heredero") presentó la acción de referencia, sobre nulidad de testamento (la "Demanda"), en contra de los herederos y legatarios de la señora Isabel Rebeca Daniels Gireaud (la "Causante"). La Causante falleció en **octubre de 2016**.

La Demandante alegó que actuaba en su capacidad de albacea de la sucesión de su esposo, el Sr. Carlos Rubén Daniels Gireaud (el

Número Identificador
SEN2024_____

"Heredero"), quien era hermano y heredero de la Causante, y quien falleció en **marzo de 2019**.

En la Demanda se alega que es nulo un testamento otorgado por la Causante en el 2013 (Escritura Núm. 36 del 21 de septiembre de 2013, o el "Testamento"). En el Testamento consta un legado de un inmueble, ubicado en la urbanización Villa Nevares (la "Propiedad"), a unos menores de edad (los "Menores"), familiares de la Causante (nietos de un sobrino de ella). Esta Propiedad ya fue cedida a los Menores, de conformidad con lo dispuesto en el Testamento, mediante una Escritura de Pago y Aceptación de Legado, otorgada en **julio de 2019**. La Demandante solicitó al TPI que se anule el asiento de inscripción del referido inmueble en el Registro de la Propiedad.

Al contestar la Demanda, los Menores y dos hermanos de la Causante (los "Co-Demandados") afirmaron, en lo pertinente, que la Demandante no tenía legitimación activa para impugnar el Testamento, por ella no ser parte de la sucesión de la Causante. Aseveraron que, en vida, el Heredero realizó las "gestiones relacionadas [con] la sucesión de la Causante", sin objetar lo dispuesto en el Testamento.

Subsiguientemente, la Demandante instó una *Moción en Solicitud de Sentencia Sumaria* (la "Moción"). Planteó que no había controversia sobre la nulidad del Testamento.

Los Co-Demandados se opusieron a la Moción. Alegaron que el Heredero "realizó, junto con los demás herederos, todos los actos para liquidar la herencia [de la Causante] antes de su fallecimiento". Es decir, afirmaron que el Heredero "ya había, de manera activa, liquidado junto a los demás herederos todo el dinero habido en las cuentas de la Causante y no había presentado ninguna controversia contra el pago del legado ni para solicitar la nulidad del Testamento".

La Demandante replicó; arguyó que, como viuda y albacea del Heredero, está "plenamente legitimada a presentar este caso e intervenir en los asuntos de la herencia" de la Causante. Ello con el fin de reivindicar bienes que debían considerarse como parte del caudal del Heredero.

Los Co-Demandados duplicaron; arguyeron que los integrantes de la sucesión de la Causante, incluido el Heredero, determinaron respetar la voluntad de esta según consignada en el Testamento. Plantearon que ello quedó demostrado a través de los actos de los herederos de la Causante y la correspondiente repartición de los bienes del caudal de la Causante. Resaltaron que, "siendo nulo o no el Testamento, todos los herederos [de la Causante] son mayores de edad [y] capaces", por lo cual "tenían la facultad de hacer o no lo dispuesto en el Testamento, pero decidieron ponerse de acuerdo en cumplir con … [la] última voluntad" de la Causante.

Mediante una Sentencia notificada el 31 de mayo de 2024 (la "Sentencia"), el TPI declaró con lugar la Moción. En consecuencia, decretó la nulidad del Testamento y ordenó la anulación del asiento de inscripción, a favor de los Menores, relacionado con la Propiedad. El TPI determinó que no había controversia sobre los siguientes hechos:

> 1. El 12 de enero de 2011, Doña Isabel mediante la Escritura Número Uno (1) ante el Notario Ángel L. Tapia Flores, otorgó un testamento abierto, en el cual instituyó como únicos y universales herederos a partes iguales, a sus tres (3) hermanos: (i) Carlos Rubén Daniels Gireaud, (ii) José Antonio Daniels Gireaud y (iii) Ana Margarita Daniels Gireaud; a su sobrino (iv) Rudy Escalera Daniels, y a los sobrinos de su difunto esposo: (v) Jorge Luis Medina Ramírez, (vi) Cruz María Medina Ramírez, (vii) Pedro Juan Medina Ramírez, (viii) Lydia Esther Medina Ramírez y (ix) Víctor Manuel Medina Ramírez, hijos de su cuñado Juan Medina Quiñones.
>
> 2. El 21 de septiembre de 2013, Doña Isabel otorgó un segundo testamento abierto, mediante la Escritura Número Treinta y Seis (36) ante el Notario Ángel L. Tapia Flores, el 21 de septiembre de 2013, en el que la

codemandada Ana Margarita Daniels Gireaud era la albacea testamentaria y administradora, según dicho documento. En éste, aparecen nombrados como únicos y universales herederos a partes iguales, las mismas personas instituidas en el Testamento otorgado en el 2011. Además, aparece un legado de una propiedad inmueble, sita en la Calle 19 #1028 en la Urbanización Villa Nevárez a favor de los nietos de su sobrino Rudy Escalera Daniels, hijos de Juan Miguel Orta García y Ruddyanne Escalera Olivencia, los codemandados menores de edad I.M.O.E. y E.M.O.E., nacidos el 1 de diciembre de 2011 y el 21 de mayo de 2013, respectivamente, según surge de dicho documento.

3. Doña Isabel falleció el 21 de octubre de 2016, a sus 90 años.

4. La Oficina de Inspección de Notarías (en adelante, "ODIN") emitió copia certificada del original de la escritura (Escritura Numero Treinta y Seis (36) ante el Notario Ángel L. Tapia Flores del año 2013) y la misma no contiene el signo, la rúbrica ni el sello del notario Tapia Flores en ninguno de sus folios, ni la firma de dicho notario.[1]

El TPI razonó que la Demandante "heredó toda causa de acción que forma[ra] parte [del] caudal" del Heredero, incluidas "aquellas que persiguen reivindicar bienes y derechos que pertenecen, en parte, a la sucesión" del Heredero. Concluyó que la "acción para impugnar la validez de[l] Testamento formó parte del caudal" del Heredero. En los méritos, concluyó que el Testamento era nulo.

El 17 de junio (lunes), los Co-Demandados solicitaron la reconsideración de la Sentencia. Hicieron énfasis en que lo dispuesto por la Causante en el Testamento fue respetado por todos los herederos a través de sus actos. Insistieron en que la Demandante carecía de legitimación activa debido a que el Heredero optó por no impugnar el Testamento y así respetar la voluntad de su hermana (la Causante) según allí consignada. Aseveraron que, antes de fallecer el Heredero, la herencia de la Causante ya había sido liquidada, por lo cual la Demandante no podía ahora cuestionar

---

[1] Notas al calce en el original fueron omitidas.

lo que su marido (el Heredero) en vida determinó que no cuestionaría.

Mediante una Orden notificada el 20 de junio, el TPI denegó la referida moción de reconsideración.

Inconformes, el 22 de julio (lunes), los Co-Demandados presentaron el recurso que nos ocupa. En lo pertinente, reiteraron que, como el Heredero realizó en vida "todas las gestiones relacionadas con la sucesión de la Causante", y como los herederos de la Causante eran mayores de edad y tenían plena capacidad, la Demandante estaba ahora impedida de plantear, a nombre del Heredero, un asunto renunciado por este.

La Demandante presentó su alegato, en el cual reprodujo lo planteado ante el TPI. Resolvemos.

II.

La sentencia sumaria es un mecanismo procesal que se utiliza para lograr la solución justa, rápida y económica de una controversia donde resulta innecesario celebrar un juicio en su fondo. *Meléndez González v. M. Cuebas, Inc.,* 193 DPR 100, 109 (2015). Este mecanismo procede cuando no existe una controversia real sobre hechos materiales. Un hecho es material cuando puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). La Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, llama a estos hechos *esenciales y pertinentes*.

La Regla 36, *supra*, impone un número de requisitos tanto al proponente de la sentencia sumaria como al que se opone a la misma. La moción de sentencia sumaria debe contener: una exposición breve de las alegaciones de las partes, los asuntos litigiosos en controversia, la causa de acción sobre la cual se solicita la sentencia sumaria, una relación concisa y organizada en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los

cuales no hay controversia, con indicación de los párrafos o páginas de la prueba documental donde se establecen los mismos, la argumentación del derecho aplicable y el remedio que se solicita. 32 LPRA Ap. V, R. 36.3(a).

De igual forma, el que se opone a la sentencia sumaria tiene que cumplir con las exigencias de la Regla 36, *ante*. En particular, debe enumerar aquellos hechos materiales de buena fe controvertidos y aquellos sobre los cuales no hay controversia. En ambos casos, por cada hecho, se tienen que indicar los párrafos o páginas de la prueba documental que establecen o impugnan ese hecho. 32 LPRA Ap. V, R. 36.3(b).

La parte que se opone a que se dicte sentencia sumariamente "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente". 32 LPRA Ap. V, R. 36.3(c). Los hechos enumerados en la moción de sentencia sumaria que no sean debidamente controvertidos podrán considerarse admitidos. 32 LPRA Ap. V, R. 36.3(d). De forma similar, "[e]l tribunal no tendrá la obligación de considerar aquellos hechos que no han sido específicamente enumerados". *Íd*. El tribunal podrá dictar sentencia sumariamente cuando, de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y otra evidencia, no surja controversia real sustancial sobre algún hecho material y, además, proceda como cuestión de derecho. 32 LPRA Ap. V, R. 36.3(e).

III.

De otra parte, el Artículo 610 del Código Civil de 1930,[2] 31 LPRA sec. 2092, establece que por el solo hecho de la muerte, los

---

[2] Al igual que el TPI, hacemos referencia al Código Civil de 1930, aplicable a la controversia de autos, por estar vigente al momento de fallecer la Causante el 21 de octubre de 2016.

herederos suceden al difunto en todos sus derechos y obligaciones. De este modo, "[l]a herencia comprende todos los bienes, derechos y obligaciones de una persona, que no se extingan por su muerte". Artículo 608 del Código Civil de 1930, 31 LPRA sec. 2090; *Álvarez v. Srio. de Justicia*, 150 DPR 252, 266 (2000). Así pues, los derechos patrimoniales son transmisibles por herencia; entendido por patrimonio el conjunto de derechos y obligaciones pertenecientes a una persona, apreciable en dinero o susceptible de una valoración económica. *Vda. de Delgado v. Boston Ins. Co.*, 101 DPR 598, 606 (1973).

La regla general es que la posición jurídica del causante se mantendrá en lo posible inalterable, con la colocación del heredero en su lugar. *Torres, Torres v. Torres*, 179 DPR 481, 497 (2010). En cuanto a la transmisibilidad de los derechos y obligaciones a raíz de la muerte del causante, en *Sucesión Álvarez Crespo v. Pierluisi*, 150 DPR 252, 268-269 (2000), se dispuso, citando a Lacruz Berdejo, lo siguiente:

> [n]o sólo se transmiten los derechos subjetivos ya nacidos, sino también los *in fieri*.... "[E]l art. 661 proclama que la sucesión a título universal transmite al heredero el conjunto de las relaciones jurídicas del causante que no se extinguen, por razón de su propia naturaleza, con su muerte, y por tanto ha de operarse la transmisión en todas sus obligaciones; pero también en todos sus derechos, ya estén consolidados o en vías de consolidación; pues cuando la posibilidad de ejercitar un derecho depende del transcurso de un plazo al morir el causante, el heredero podrá ejercitarlo cuando transcurra dicho plazo, incluso sin esperar a la adjudicación... y si esta posibilidad existe en cuanto a derechos que no pudo ejercitar en vida el causante, ha de estar legitimado con mayor razón al suceder en aquellos cuyas acciones pudo ejercitar dicho causante, aun [sic] cuando por las razones que fuera no las hubiera ejercitado. J. L. Lacruz Berdejo, Derecho de Sucesiones, Barcelona, Ed. Bosch, 1971, Vol. I, págs. 4849. (Énfasis en el original suprimido).

La "acción que tenía el causante para impugnar negocios jurídicos o actos de terceros se transmite a los herederos y, si estos fallecen sin ejercerla, la transmiten a su vez a sus herederos, incluso

a sus herederos voluntarios".[3]  Efraín González Tejera, *Derecho de Sucesiones, La Sucesión Intestada,* Tomo I, Ed. Universidad de Puerto Rico, 2001, pág. 371.

Ahora bien, todos los derechos son renunciables, excepto cuando la renuncia sea contraria a la ley, al interés o el orden público, o en perjuicio de terceros.  Artículo 4 del Código Civil de 1930, 31 LPRA sec. 4; *Ramos Rivera v. E.L.A.,* 148 DPR 118, 128-129 (1999); *Ponce Gas Service Corp. v. J.R.T.,* 104 DPR 698, 702 (1976).  Aunque se reconoce que la renuncia de derechos puede ser expresa o tácita, en *Eastern Sands, Inc. v. Roig Comm. Bank,* 140 DPR 703, 720 (1996), el requisito indispensable de toda renuncia es que ésta sea "clara, terminante, explícita e inequívoca".

IV.

Como cuestión de derecho, el asunto de umbral que el TPI tenía que dilucidar era si la Demandante realmente heredó la causa de acción que aquí pretende ejercer.  Ello, a su vez, depende de si el Heredero, al fallecer, tenía en su caudal dicha causa de acción o si, por el contrario, la misma se había extinguido a raíz de la renuncia del Heredero a ejercerla.

Concluimos que el récord no le permitía al TPI resolver este asunto por la vía sumaria.  Lo que el récord contiene al respecto son únicamente alegaciones.   Por un lado, la Demandante parece sostener que el Heredero no renunció a impugnar el Testamento.  Por otro lado, los Co-Demandados alegan que, con sus actos, el Heredero sí renunció a dicha causa de acción.   Ello al afirmativamente tomar pasos para dividir el caudal de la Causante, sin objetar o impugnar el Testamento, a pesar de conocer los hechos que ahora utiliza la Demandante para impugnarlo.

---

[3] Nota al calce en el original suprimida.

No obstante, más allá de estas alegaciones contradictorias, el récord está huérfano de prueba alguna que sustente las respectivas posturas de las partes sobre la posible renuncia en vida, por el Heredero, de la causa de acción que la Demandante sostiene heredó cuando el Heredero falleció. Por tanto, el TPI erró al concluir, por la vía sumaria, que la causa de acción ejercida a través de la Demanda realmente formaba parte del caudal del Heredero cuando este falleció.

De hecho, en esta etapa, el récord sugiere fuertemente la posibilidad de que el Heredero, en vida, consintió a respetar lo dispuesto en el Testamento. Adviértase que los Co-Demandados alegan, sin que ello haya sido contradicho por la Demandante, que el Heredero estuvo de acuerdo con dividir el caudal de la Causante de conformidad con lo dispuesto en el Testamento y que fue el Heredero quien retiró el dinero de la cuenta de banco de la Causante y repartió ese dinero de conformidad con el Testamento.

En cualquier caso, el récord no le permitía al TPI, ni nos permite en esta etapa, determinar si el Heredero, en vida, renunció o no a la acción de nulidad del Testamento y, por ende, si dicha acción en realidad "formó parte del caudal relicto" de este. Aunque un heredero adquiere, como parte del caudal, las acciones que el causante pudo ejercitar, y por cualquier razón no ejercitó en vida, cuando el causante ha renunciado a determinado derecho, el mismo sale de su caudal y, por tanto, los miembros de su sucesión no lo adquieren.

Resaltamos que el Heredero, junto a los demás integrantes de la sucesión de la Causante, válidamente podían determinar, como adultos capacitados, respetar lo dispuesto en el Testamento, independientemente de la validez de este. Es decir, un caudal hereditario puede liquidarse mediante una división distinta a la consignada por el causante, si todos los herederos, con capacidad

para ello, así lo acuerdan.  Véase, Artículo 853 del Código Civil de 1930, 31 LPRA 8226.

En fin, si en vida el Heredero, expresa o tácitamente, por sus manifestaciones o actuaciones, renunció a su derecho a impugnar el Testamento o, lo que es igual, determinó que el caudal de la Causante se dividiría de conformidad con lo dispuesto en el Testamento, cualquier causa de acción que este hubiese tenido al respecto habría desaparecido y no habría así formado parte de su caudal cuando este falleció.  En tal caso, la Demandante no habría heredado la causa de acción y procedería la desestimación de la Demanda.

Al continuar con los procedimientos, se deberá conducir el descubrimiento de prueba que sea necesario, en torno a la controversia sobre la posible anuencia del Heredero a dividir el caudal de la Causante de conformidad con lo dispuesto en el Testamento, y así renunciar a su derecho a impugnar el mismo. Oportunamente, el TPI deberá adjudicar dicha controversia de umbral, luego del correspondiente juicio plenario, de este ser necesario.

V.

Por los fundamentos que anteceden, se revoca la *Sentencia* apelada y se devuelve el caso al Tribunal de Primera Instancia para trámites ulteriores compatibles con lo aquí expuesto y resuelto.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>Secretaria del Tribunal de Apelaciones