ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| GIOMAR LLC,<br><br>Apelante<br><br>v.<br><br>ILKA ROBLES TORRES T/C/C ILKA CELESTE ROBLES TORRES<br><br>Apelada | KLAN202300806 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Salinas<br><br>Caso Núm.: SA2021CV00192<br><br>Sobre: Acción Civil; Sentencia Declaratoria; Cumplimiento Específico; Consignación |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de octubre de 2023.

Comparece Giomar LLC (en adelante, Giomar y/o parte apelante) mediante un recurso de *Apelación*, para solicitarnos la revisión y revocación de la *Sentencia Enmendada* (en adelante, la *Sentencia apelada*) emitida el 11 de agosto de 2023, notificada el 14 de agosto de 2023, por el Tribunal de Primera Instancia, Sala Superior de Salinas (en adelante, TPI).[1] Mediante el dictamen apelado, el foro primario declaró Sin Lugar la *Demanda* presentada por Giomar y Con Lugar la *Reconvención* presentada por la señora Ilka Robles Torres (en adelante, señora Robles Torres y/o apelada). En consecuencia, ordenó a Giomar a pagar a la señora Robles Torres la suma de $3,000.00 dólares por concepto de sufrimientos y angustias mentales, más los gastos y costas del procedimiento y los intereses al tipo legal desde la fecha de la radicación de la *Demanda*. Además, le impuso el pago de $4,000.00 dólares por concepto de

---

[1] Apéndice de la parte apelante, a las págs. 1622-1630.

Número Identificador

SEN2023_____

honorarios de abogado y ordenó la devolución del dinero consignado, por la suma de $30,000.00 dólares a Giomar.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia apelada.*

**I**

El 20 de julio de 2021, Giomar presentó una *Demanda* sobre sentencia declaratoria, cumplimiento específico y consignación contra la señora Robles Torres, también conocida como Ilka Celeste Robles Torres.[2] Adujo que la señora Robles Torres era dueña de un solar en el área Mar Blanco del Barrio Las Mareas del municipio de Salinas (en adelante, Solar M-18), Puerto Rico, con la siguiente descripción:

> SOLAR NÚMERO: M – DIECIOCHO (M-18): de veinte metros de frente camino por treinta y dos metros de fondo de área aproximada de quinientos metros cuadrados, sita en área Mar Blanco del Barrio Las Mareas del Municipio de Salinas, Puerto Rico; colinda por el NORTE, con camino-calle privado de la finca, por el SUR; con aguas del Mar Caribe; por el ESTE; con finca principal privada solar ocupado María V. Lebrón Torres por el OSTE; con finca principal solar actualmente desocupado.

Expresó que, allá para el 7 de abril de 2021, las partes suscribieron un *Contrato de Opción de Compra* (en adelante, el *Contrato*) mediante declaración jurada. Arguyó que, mediante el *Contrato*, la señora Robles Torres concedió a Giomar la opción de adquirir la propiedad por el precio alzado de $30,000.00 dólares. Con la firma del *Contrato*, la señora Robles Torres recibió el pago de $15,000.00 dólares, mientras que los restantes $15,000.00 dólares, serían pagados al momento en que finalizara el término de la opción y al momento de la firma de la escritura de compraventa.

El término del *Contrato* era de noventa (90) días a partir de la fecha en que fue suscrito, es decir, hasta el 6 de julio de 2021. Alegó que, presuntamente el término del *Contrato* fue extendido y/o

---

[2] *Id.,* a las págs. 37-47 y 1204-1210.

prorrogado por Giomar hasta el 16 de julio de 2021. Solicitó al foro primario que recibiera los fondos que estarían consignando, entiéndase, $15,000.00 dólares, que alegadamente le faltaban por pagar a la señora Robles Torres y que le ordenara a esta última a suscribir la escritura de compraventa del Solar M-18.

Por su parte, el 9 de septiembre de 2021, la señora Robles Torres presentó *Contestación a la Demanda*.[3]  En ella incluyó, además, una *Reconvención.*  En la *Contestación a la Demanda* alegó que el 6 de julio de 2021, venció el *Contrato* sin que Giomar tuviera algún tipo de comunicación con la señora Robles Torres, esto a pesar de ella haber tratado de comunicarse en varias ocasiones a través de llamadas y mensajes de texto. Respecto a la alegada reunión del 11 de julio de 2021, alegó que el licenciado Calixto Díaz Alonso (en adelante, licenciado Díaz), presidente y administrador de Giomar, llegó tarde a la misma y en ningún momento le ofreció los $15,000.00 dólares que restaban pagar para que se diera la venta. Expuso que no hubo otros acuerdos que no fueran los consignados en el *Contrato* firmado por las partes en San Juan, Puerto Rico, el día 7 de abril de 2021, ante el notario Carlos Rosario Rivera. Indicó que, Giomar no solicitó prórroga o término adicional por escrito a la señora Robles Torres ni durante la vigencia del *Contrato*, ni después del vencimiento, para pagar el balance del precio de venta. Con este escrito, consignó un cheque por $15,000.00.00 dólares por la devolución de la prima de la opción que pagó Giomar.

Por otro lado, mediante la *Reconvención* presentada, la señora Robles Torres indicó que, debido a la radicación de la *Demanda,* no ha podido vender el Solar M-18 a pesar de que se le han acercado varios clientes interesados en el mismo. Solicitó el reembolso de los gastos de mensura por $1,000.00 dólares, daños y perjuicios por sufrimientos y angustias mentales estimados en $10,000.00 dólares

---

[3] *Id.,* a las págs. 48-53.

y la suma de $30,000.00 dólares por pérdidas económicas al no poder vender el Solar M-18. Por su parte, el 14 de septiembre de 2021, Giomar presentó una *Réplica a Reconvención*.[4]

Así las cosas, y en lo pertinente, el 8 de julio de 2022, las partes presentaron un *Informe Preliminar entre Abogados para la Conferencia con Antelación al Juicio* (en adelante, *ICAJ*).[5] Respecto a la exposición sobre los asuntos en controversia, Giomar alegó que existían cuatro (4): (i) si hubo una prórroga del *Contrato* por las manifestaciones de la señora Robles Torres; (ii) si la señora Robles Torres se obligó o generó una nueva obligación de vender el Solar M-18; (iii) si continuaba la obligación asumida y reconocida por la señora Robles Torres el 11 de marzo de 2021; y, (iv) si existe o no temeridad de parte de Giomar. Por su parte, la señora Robles Torres alegó la existencia de tres (3) asuntos en controversia: (i) si el *Contrato* caducó y por tanto se extinguió la obligación de vender; (ii) si el *Contrato* venció; y, (iii) si hubo temeridad por parte de Giomar.

Luego, el 17 de agosto de 2022, las partes presentaron una *Moción Conjunta Suplementando Informe Preliminar entre Abogados para Informe de Conferencia con Antelación a Juicio* (en adelante, *ICAJ suplementado*).[6] Del *ICAJ suplementado* se desprende que las partes lograron conciliar ciento veinticinco (125) estipulaciones de hechos.[7] De igual forma, en cuanto a la prueba documental enumerada en el inciso A, las partes lograron estipular la autenticidad y admisibilidad de veintiún (21) documentos, enumerados del 1-21.[8] En relación a cuatro (4) documentos adicionales, enumerados del 22 al 25,[9] las partes estipularon que

---

[4] *Id.,* a las págs. 54-57.
[5] *Id.,* 66-94.
[6] *Id.,* a las págs. 95-106 y 792-803.
[7] Apéndice de la parte apelante, a las págs. 95-103. Las primeras 19 estipulaciones sobre hechos sobre los cuales no existía controversia surgieron del *Informe Preliminar entre Abogados para la Conferencia con Antelación al Juicio.* Por su parte, los hechos adicionales estipulados del 20 al 125 surgieron posterior a la Conferencia con Antelación al juicio.
[8] Apéndice de la parte apelante, a las págs. 103-104.
[9] *Id.,* a la pág. 104.

fueron debidamente enviados y recibidos, mas no estipularon su contenido. Por otro lado, Giomar informó un documento adicional, enumerado como Parte VI, Inciso B, número 1,[10] mientras que la señora Robles Torres informó cinco (5) documentos, enumerados como Parte VI, inciso C, del 1 al 5.[11] En relación con los testigos, cada parte informó los suyos. Giomar informó que tendría ocho (8) testigos mientras que la señora Robles Torres tendría tres (3).

Así las cosas, el 7 de noviembre de 2022, Giomar presentó una *Moción en Solicitud de Sentencia Sumaria.*[12] Allí, Giomar consignó ciento sesenta y cuatro (164) propuestas de hechos incontrovertidos, enumeradas desde el acápite 61 hasta el 219. Señalaron los siguientes asuntos en controversia: (i) si hubo una prórroga del *Contrato* por las manifestaciones de la señora Robles Torres; (ii) si la señora Robles Torres se obligó (novación tácita) o generó una nueva obligación de vender el Solar M-18; (iii) si continuaba la obligación asumida y reconocida el 11 de marzo de 2021; (iv) si existe o no temeridad de parte de la señora Robles Torres; y, (v) si procede desestimar la *Reconvención.* Expusieron que, el 16 de julio de 2021, recibieron una carta del licenciado Manuel E. Fuster Martínez indicando que las obligaciones quedaron unilateralmente extintas y le devolverían los $15,000.00 dólares pagados. A esos efectos, solicitaron que el foro primario ordenara a la señora Robles Torres a dar cumplimiento específico a los pactos acordados a los efectos de que traspasara la titularidad del Solar M-18 a Giomar y desestimara la *Reconvención.* Además, consignaron en el Tribunal el monto de $15,000.00 dólares que le restaba a Giomar pagar.

El 30 de diciembre de 2022, la señora Robles Torres presentó una *Moción en Oposición a la Moción de Sentencia Sumaria y en*

---

[10] *Id.,* a la pág. 801.
[11] *Id.*
[12] Apéndice de la parte apelante, a las págs. 1-767.

*Solicitud para que se Dicte Sentencia Sumaria Parcial a Favor de la Parte Demandada.*[13] Se opuso a la *Moción en Solicitud de Sentencia Sumaria* y solicitó que se dictara sentencia sumaria a su favor y que se señalara una vista evidenciaria para discutir lo relativo a los daños reclamados en la *Reconvención.*

Mediante *Orden* emitida el 30 de enero de 2023, el tribunal *a quo,* dio por sometido el asunto en cuestión.[14] De ahí, el 9 de febrero de 2023, el foro primario emitió una *Resolución* mediante la cual denegó la *Moción en Solicitud de Sentencia Sumaria* presentada por Giomar.[15] Empero, emitió doce (12) determinaciones de hechos incontrovertidos.[16] El foro primario concluyó que los siguientes asuntos se encontraban en controversia:

1. Si hubo una prórroga del contrato de opción por las manifestaciones de la parte Demandada.
2. Si la Demandada se obligó o generó una nueva obligación de vender el solar.
3. Si continuaba la obligación asumida y reconocida por la Demandada el 11 de marzo de 2021, en el Restaurante Las Casitas.[17]

Luego, producto de una *Moción en Solicitud de Reconsideración y/o Determinaciones de Hechos y Derecho Adicionales*[18], presentada por Giomar el 15 de febrero de 2023, el tribunal *a quo,* el 8 de marzo de 2023, emitió una *Resolución -en Reconsideración-.*[19] Conforme se desprende de los autos, la finalidad de la *Resolución -en Reconsideración-* fue para añadir treinta y dos (32) determinaciones de hecho incontrovertidos.[20]

Luego, el 9 de marzo de 2023, la señora Robles Torres presentó una *Moción de Reconsideración y/o para que se Aclaren Hechos Incontrovertidos.*[21] En respuesta, el 10 de marzo de 2023, la

[13] *Id.,* a las págs. 768-1486.
[14] *Id.,* a la pág. 1504.
[15] *Id.,* a las págs. 1508-1513.
[16] *Id.,* a las págs. 1510-1511.
[17] *Id.,* a la pág. 1511.
[18] *Id.,* a las págs. 1514-1524.
[19] *Id.,* a las págs. 1525-1532.
[20] *Id.,* a la pág. 1530.
[21] *Id.,* a las págs. 1533-1534.

primera instancia judicial emitió *Resolución* mediante la cual expresó lo siguiente:

> Como se pide. Se aclara que los hechos declarados como incontrovertidos en los números 6, 20, 30 y 31 de la Resolución con fecha del 8 de marzo de 2023 (entrada 92) es a los únicos efectos de establecer que se enviaron y recibieron los mensajes de texto. No son hechos incontrovertidos el contenido de los referidos mensajes de texto.[22]

De lo que sigue, el *Juicio en su Fondo* se celebró del 13 al 15 de marzo de 2023. Se desprende de los autos que, llamado el caso para Juicio en su Fondo,[23] el foro primario constató que la prueba testifical anunciada por Giomar, la cual constaba de ocho (8) testigos[24], no se encontraba completa. Es decir, el foro primario hizo constar que faltaron dos (2) personas testigos, el señor José Castro Torres y la señora Ángela Colón Flores, correspondientes a la prueba de Giomar. La señora Colón Flores compareció el segundo día de juicio; por su parte, el señor Castro Torres no se presentó ni excusó su comparecencia. En fin, durante el juicio, Giomar presentó los testimonios de tres (3) personas, a saber: (i) Elaine Cintrón Brandes; (ii) Elaine Sotomayor Cintrón; y (iii) el del licenciado Díaz. Por su parte, la señora Robles Torres solo presentó su propio testimonio. Con relación a los otros testigos, determinó que no serían interrogados por considerarlos prueba acumulativa, por lo que los puso a disposición de Giomar.

En relación con la prueba documental, el foro primario expresó lo siguiente:

> La prueba documental, aunque en su mayoría estipulada según surge del Informe de Conferencia con Antelación a Juicio, fue cargada por las partes a través de la plataforma SUMAC... Sin embargo, la única prueba documental que se presentó y admitió fue la marcada como Exhbit E-1 Contrato de Opción del 7 de abril de 2021, suscrito por Ilka Robles Torres y el Lcdo.

---

[22] *Id.,* a las págs. 1535.
[23] *Id.,* a las págs. 1622-1623.
[24] Los ocho (8) testigos eran: (1) el licenciado Calixto Díaz Alonso; (2) la señora Elaine Cintrón Blandes; (3) la señora Elaine Marie Sotomayor Cintrón; (4) el señor José Castro Torres; (5) la señora Ángela Colón Flores; (6) la señora Ilka Robles Torres; (7) el señor Jean Pierre Robles; y (8) la señora Glorimar Gutiérrez.

Calixto Díaz Alonso en representación de Giomar LLC; el marcado como E-8 Mensaje de texto de Ilka Robles a Elaine Sotomayor el viernes 9 de julio de 2021, y el E-11 recibos de las Mensuras (2/julio/2021 y 8/julio/2021). No se admitieron los propuestos y marcados e identificados como exhibits número 22 y 23 presentados por la parte demandante. Dicha parte no los pudo autenticar, además, los retiró.

Celebrado el juicio, el 2 de mayo de 2023, el foro primario emitió una *Sentencia.*[25] La misma fue notificada al día siguiente. De la *Sentencia* se desprende, además, que las controversias ante la consideración de la primera instancia judicial eran: (i) determinar si el *Contrato* se prorrogó, extendió o caducó al amparo del Código Civil vigente; (ii) si existía alguna responsabilidad de Giomar hacia la señora Robles Torres; (iii) determinar si hubo daños económicos, y daños por sufrimientos y angustias mentales; y, (iv) si Giomar debía reembolsarle a la señora Robles Torres los gastos de mensura de $1,000.00 dólares incurridos por esta para medir el solar que había opcionado a Giomar.[26]

Luego, a raíz de una *Moción en Solicitud [de] Reconsideración de Sentencia y/o Determinaciones de Hechos y Derecho Adicionales y Otros Extremos*[27], y sus correspondientes réplicas[28], el 11 de agosto de 2023, el TPI emitió una *Sentencia Enmendada,* la cual fue notificada el 14 de agosto de 2023 (en adelante, la *Sentencia apelada*).[29] Conforme surge de la *Sentencia apelada,* luego de haber reconsiderado y producto de diecisiete (17) determinaciones de hechos emitidas,[30] que, conforme expresó el foro primario, fueron emitidos a base de la prueba y de la credibilidad de los testigos, resolvió lo siguiente:

---

[25] Apéndice de la parte apelante, a las págs. 1541-1549.
[26] *Id.,* a la pág. 1543.
[27] *Id.,* a las págs. 1550-1580.
[28] *Id.,* a las págs. 1581-1587, 1593-1599 y 1603-1616.
[29] *Id.,* a las págs.1622-1630.
[30] *Id.,* a las págs. 1623-1625.

**Se declara Sin Lugar la Demanda, y Con Lugar la Reconvención.**

En su consecuencia, el Tribunal condena a la demandante-reconvencionada GIOMAR, LLC, a pagar a la demandada Ilka Robles Torres t/c/c Ilka Celeste Robles Torres la suma total de tres mil dólares ($3,000.00), por concepto de sufrimientos y angustias mentales; más los gastos y costas del procedimiento, y los intereses al tipo legal desde la fecha de la radicación de la demanda. Además, se impone el pago de cuatro mil dólares ($4,000.00) por concepto de honorarios de abogado.

De acuerdo a lo anterior, se ordena la devolución del dinero consignado por la suma de treinta mil dólares ($30,000.00) a la parte demandante GIOMAR, LLC.[31] (Énfasis en el original).

En la *Sentencia apelada,* el foro primario concluyó lo

siguiente:

En este caso, quedó demostrado que el contrato de opción venció el 6 de julio de 2021; que el mismo no se extendió o renovó; que la demandada no tiene ninguna obligación en ley de venderle a la demandante; que la demandada incurrió en gastos de mensura por mil dólares ($1,000.00); que tuvo sufrimientos y angustias mentales que se estiman en la cantidad de tres mil dólares ($3,000.00).

No obstante, entendemos que la parte demandada no probó su reclamación sobre daños económicos toda vez que con excepción del solar M-18, no había impedimento para que vendiera los otros solares. Aún más, la oferta que recibió de la demandada era para la compra de cualquiera de los terrenos, pero no vendió ninguno.[32]

Insatisfecha aún, el 12 de septiembre de 2023, compareció

Giomar, mediante un recurso de *Apelación,* mediante el cual

esgrimió la comisión de cinco (5) errores por el foro primario, a saber:

PRIMER SEÑALAMIENTO DE ERROR:
Erró el TPI al ignorar todas y cada una de las admisiones judiciales vinculantes para las partes y el propio Tribunal de Primera Instancia al momento de dictarse la Sentencia eran finales, firmes e inapelable[s].

SEGUNDO SEÑALAMIENTO DE ERROR:
Erró el TPI [al] mantener absoluto silencio sobre la prueba anunciada por la Apelada, la cual voluntariamente suprimió; al no activar la presunción establecida por la Regla 304(5) de Evidencia, *id.*

---

[31] *Id.,* a la pág. 1629.
[32] *Id.*

TERCER SEÑALAMIENTO DE ERROR:
Erró el TPI al declarar Ha Lugar la reconvención instada por la Apelada.

CUARTO SEÑALAMIENTO DE ERROR:
Erró el TPI al imponer al Apelante honorarios de abogado, sin una determinación de temeridad.

QUINTO SEÑALAMIENTO DE ERROR:
Erró el TPI en aquilatar prueba que desfiló en juicio y la que fue estipulada en la Moción Conjunta Suplementa[n]do Informe Preliminar Entre Abogados Para Informe de Conferencia con Antelación a Juicio.

El 12 de octubre de 2023, la señora Robles Torres presentó su *Alegato en Oposición.* Contando con la comparecencia de ambas partes procedemos a resolver el recurso ante nuestra consideración.

## II

### A. Recurso de Apelación

La Regla 52.2(a) de Procedimiento Civil[33], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[34] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[35] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.[36]
> […]

---

[33] 32 LPRA Ap. V, R. 52.2 (a).
[34] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000). *Arriaga v. FSE,* 145 DPR 122, 131 (1998). *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[35] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[36] 4 LPRA Ap. XXII-B, R. 13 (A).

### B. Estipulaciones

Las admisiones judiciales son las que hace una parte en el transcurso de un proceso civil al contestar una demanda o estipular unos hechos, por lo que éstas no son controvertibles.[37] A raíz de ello, cuando una parte hace una alegación o acepta una estipulación, queda obligada por la alegación salvo que el tribunal le permita retirarla.[38] A la luz de lo anterior, las estipulaciones son admisiones judiciales que implican un desistimiento formal de cualquier contención contraria a ellas.[39] No obstante, deben de interpretarse liberalmente y de forma compatible con la intención de las partes con el propósito de hacer justicia.[40] Sin embargo, de existir duda en cuanto a la intención de las partes, se debe adoptar la contención que sea más favorable para la persona a cuyo favor se hizo la estipulación.[41]

Es decir, la estipulación constituye un acuerdo de las partes que litigan ante un tribunal, sobre algún asunto o incidente del litigio.[42] En esencia, estas son herramientas esenciales en las etapas iniciales del proceso judicial y su uso es promovido por las Reglas de Procedimiento Civil.[43] A tales efectos, por medio de las estipulaciones se busca evitar dilaciones, inconvenientes y gastos, es por eso por lo que nuestro Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) promueve su uso para lograr justicia rápida y económica.[44] Esto se debe a que, estas son favorecidas en nuestro ordenamiento porque eliminan desacuerdos, y de esa forma, facilitan y simplifican la solución de las controversias jurídicas.[45]

---

[37] *Díaz Ayala et. als. v. ELA*, 153 DPR 675, 693 (2001).
[38] *Id.*
[39] *Id. Rivera Menéndez v. Action Service*, 185 DPR 431, 439 (2012).
[40] *Id. Ramos Rivera v. ELA*, 148 DPR 118, 126 (1999).
[41] *Ramos Rivera v. ELA, Id.*
[42] *Black's Law Dictionary*, 6ta Ed., West Pub. Co., St. Paul, 1990, pág. 1415.
[43] *Rivera Menéndez v. Action Service, supra.*
[44] *Ramos Rivera v. ELA, supra.*
[45] *Rivera Menéndez v. Action Service, supra.*

En nuestro ordenamiento jurídico se han reconocido tres (3) clases de estipulaciones.[46] La primera clase trata sobre las admisiones de hechos y tienen el efecto de relevar a la parte del requisito de probarlos.[47] Así, las cosas, una vez un hecho es estipulado, este no puede ser impugnado.[48] Como corolario de lo anterior, la estipulación del hecho, de ordinario, constituye una admisión de su veracidad y obliga tanto a las partes como al tribunal.[49] Por su parte, la segunda clase es la que reconoce derechos y tienen el alcance de una adjudicación.[50] Por otro lado, la tercera clase es aquella que trata sobre materias procesales, donde las partes pueden estipular la forma y manera en la que llevarán determinado curso de acción o el que se admita determinada prueba.[51] Cabe señalar que, la estipulación de un hecho, contrario a la estipulación sobre la autenticación de evidencia, implica el relevo de prueba de ese hecho, por tal razón, los tribunales no debemos dar un hecho por estipulado si ello no surge claramente de lo acordado por las partes.[52]

### C. Apreciación de la Prueba y Deferencia Judicial

Como es sabido, el ejercicio discrecional de la apreciación de la prueba que ejerce el TPI y las determinaciones que realiza están revestidas de confiabilidad y merecen respeto y deferencia.[53] Por ello, la valoración que lleva a cabo el foro primario se presume correcta, toda vez que es este quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[54] Por su parte, un foro apelativo cuenta

---

[46] *Id.*
[47] *Id.*
[48] *Id.*, 439-440.
[49] *Id.*
[50] *Id.*, 439.
[51] *Id.*, 440.
[52] *Id.*, 443.
[53] *Pueblo v. Pérez Nuñez*, 208 DPR 511, 514 (2022). *Argüello v. Argüello*, 155 DPR 62, 79 (2001) citando a *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987). *Trinidad v. Chade*, 153 DPR 280, 289 (2001).
[54] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013). *Pueblo v. Santiago*, 176 DPR 133, 148 (2009). *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).

solamente con "récords mudos e inexpresivos", por lo que se le debe respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos.[55] En ese sentido, y como regla general, no debemos intervenir con las determinaciones que este haya efectuado en virtud de la presunción de corrección de la que gozan.[56]

En vista de lo anterior, nuestro máximo foro ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[57] El Alto Foro ha determinado que un juzgador incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.[58] En consecuencia, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad; (ii) incurrió en un craso abuso de discreción; o, (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[59]

---

[55] *Autoridad de Acueductos y Alcantarillados de Puerto Rico,* 177 DPR 345, 356 (2009). *Trinidad v. Chade, supra,* 291.

[56] *Pueblo v. Pérez Nuñez, supra,* 529.

[57] *Pueblo v. Calderón Álvarez,* 140 DPR 627, 644 (1996). *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994). *Rivera Pérez v. Cruz Corchado,* 119 DPR 8, 14 (1987). S*ierra v. Tribunal Superior,* 81 DPR 554, 572 (1959).

[58] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).

[59] *González Hernández v. González Hernández,* 181 DPR 746, 776 (2011). *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR 799, 811 (2009). *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000). *Pueblo v. Irizarry,* 156 DPR 780, 789 (2002). *Pueblo v. Maisonave,* 129 DPR 49, 62-63 (1991).

De igual forma, se podrá intervenir con la determinación del TPI cuando la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble; de lo contrario, el tribunal apelativo deberá abstenerse de intervenir con la apreciación de la prueba hecha por el juzgador de los hechos.[60]

Ahora bien, cabe destacar que, el Tribunal Supremo ha resuelto que, en instancias en que las conclusiones de hecho que realice el TPI estén basadas en prueba pericial o documental, un tribunal revisor estará en la misma posición que el tribunal *a quo*.[61] Por tanto, ante dichas instancias, este tribunal apelativo "tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta".[62]

A esos efectos, aunque no está exenta de la posibilidad de toda revisión, si la actuación del tribunal a *quo* no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del TPI a quien corresponde la dirección del proceso.[63] Los foros apelativos podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas.[64]

Las decisiones discrecionales que toma el TPI no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[65] Un tribunal de justicia incurre en un abuso de discreción: (i) cuando el juez no toma en cuenta e ignora en la

---

[60] *Santiago Ortiz v. Real Legacy et al.*, *supra. Pueblo v. Arlequín Vélez,* 204 DPR 117, 148 (2020). *Pueblo v. Martínez Landrón*, 202 DPR 409, 424 (2019) citando a *Pueblo v. Maisonave, Id.*, 63. *González Hernández v. González Hernández, Id.*, 777. *Pueblo v. Viruet Camacho*, 173 DPR 563, 584 (2009). *Pueblo v. Irizarry, supra. Pueblo v. Acevedo Estrada, supra.*

[61] *González Hernández v. González* Hernández, *Id. Sepúlveda v. Depto. de Salud*, 145 DPR 560, 573 (1998).

[62] *González Hernández v. González* Hernández*, Id. Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 363 (2001). *Prieto v. Mary land Casualty Co.*, 98 DPR 594, 623 (1970).

[63] S*ierra v. Tribunal Superior, supra.*

[64] *Pueblo v. Pérez Núñez, supra.*

[65] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013). *Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009).*

decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (ii) cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o, (iii) cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[66]

A su vez, es una norma bien establecida de nuestro sistema de justicia que la discreción judicial permea la evaluación de la evidencia presentada en los casos y controversias.[67] No obstante, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal revisor.[68] A esos efectos, conviene destacar que, la intervención del foro apelativo con la prueba desfilada tiene que estar basada en un análisis independiente y no a base de los hechos que exponen las partes.[69]

### D. La Sentencia Sumaria

Como es sabido, en nuestro ordenamiento, el mecanismo de la sentencia sumaria está regido por la Regla 36 de las Reglas de Procedimiento Civil[70], la cual desglosa los requisitos específicos con los que debe cumplir esta figura procesal.[71] El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que únicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.[72] Solamente debe ser dictada una sentencia sumaria "en casos claros,

---

[66] *Pueblo v. Rivera Santiago, Id.*
[67] *González Hernández v. González Hernández, supra,* 776.
[68] *Rivera Pérez v. Cruz Corchado, supra.*
[69] *Hernández v. San Lorenzo Const.*, 153 DPR 405, 425 (2001).
[70] 32 LPRA Ap. V, R. 36.
[71] *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 224 (2015).
[72] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994).

cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes".[73]

El propósito de la sentencia sumaria es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo.[74] En otras palabras, el tribunal procederá a dictar sentencia sumaria solo cuando esté claramente convencido que la vista evidenciaria es innecesaria.[75] Al no haber controversia sustancial y real sobre hechos materiales, sólo falta aplicar el derecho pertinente a la controversia.[76] Ahora bien, reiteradamente el Tribunal Supremo ha indicado que, el mecanismo de sentencia sumaria no es el apropiado para resolver casos en donde hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial.[77]

Ahora bien, la Regla 36.4 de las Reglas de Procedimiento Civil aborda lo que sucede cuando el pleito no es decidido en virtud de moción:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.

---

[73] *Id. Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 720-721 (1986). *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716, 726 (1994). *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990).

[74] *García Rivera et al. v. Enríquez*, 153 DPR 323, 337 (2001). *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994).

[75] *Nissen Holland v. Genthaller*, 172 DPR 503, 511 (2007).

[76] *García Rivera et al. v. Enríquez, supra.*

[77] *Elías y otros v. Chenet y otros,* 147 DPR 507, 521 (1999). *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994). *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 663 (2017).

> A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno.[78]

### E. Regla 304 (5) de las Reglas de Evidencia

Por razones de lógica y conveniencia, se estima que las partes litigantes presentarán toda la prueba que les sea favorable en un juicio.[79]

El Capítulo I de las Reglas de Evidencia aborda varias disposiciones generales. La Regla 110 dispone lo relativo a la evaluación y suficiencia de la prueba. La Regla 110, en lo concerniente, lee como sigue: "La juzgadora o el juzgador de hechos deberá evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los principios siguientes: [...] (G) Cuando pareciere que una parte, teniendo disponible una prueba más firme y satisfactoria, ofrece una más débil y menos satisfactoria, la evidencia ofrecida deberá considerarse con sospecha. [...]".[80]

El Capítulo III de las Reglas de Evidencia aborda lo relativo a las presunciones. En la Regla 304 se menciona una serie de presunciones específicas. La Regla 304, en lo aquí pertinente, lee como sigue: "Las presunciones son aquéllas establecidas por ley o por decisiones judiciales. Entre las presunciones controvertibles se reconocen las siguientes: [...] (5) Toda evidencia voluntariamente suprimida resultará adversa si se ofreciere. [...]".[81] Cuando se trata de un testigo anunciado por una parte, la referida Regla obliga a la parte que lo anuncia y no lo va a usar, a ponerlo a disposición de la otra parte para escapar la presunción de que su testimonio le sería adverso.[82]

---

[78] 32 LPRA Ap. V, R. 36.4.
[79] R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, 4ta ed., San Juan, Ed. Situm, 2015, pág.171.
[80] 32 LPRA Ap. VI, R. 110 (G).
[81] 32 LPRA Ap. VI, R. 304(5).
[82] E. L. Chiesa, *Tratado de Derecho Probatorio*, Primera Edición, Estados Unidos de Norte América, Publicaciones JTS, 2005, Tomo II, pág. 1013.

**F. Reconvención**

La Regla 5.1 de las Reglas de Procedimiento Civil aborda cuales son las alegaciones permitidas, entre ellas se encuentra la reconvención.[83] Por su parte la Regla 11.1 explica lo que es una reconvención compulsoria:

> Una alegación contendrá por vía de reconvención cualquier reclamación que la parte que la formula tenga contra cualquier parte adversa al momento de notificar dicha alegación, siempre que surja del acto, de la omisión o del evento que motivó la reclamación de la parte adversa y no requiera para su adjudicación la presencia de terceros sobre quienes el tribunal no pueda adquirir jurisdicción. Sin embargo, no será necesario incluir dicha reclamación mediante reconvención si al momento de comenzarse el pleito tal reclamación era ya objeto de otro pleito pendiente.[84]

Respecto al alcance de la reconvención, la Regla 11.3 dispone que: "Una reconvención puede disminuir o derrotar la reclamación de la parte adversa y también puede reclamar un remedio por cantidad mayor o de naturaleza diferente al solicitado en la alegación de la parte adversa".[85]

**G. Honorarios de Abogado por Temeridad**

La Regla 44 de las Reglas de Procedimiento Civil aborda lo relativo a costas, honorarios de abogado e interés legal. La Regla 44.1 de las Reglas de Procedimiento Civil tiene un fin de índole disuasivo: desalentar los pleitos temerarios y superfluos.[86] En particular, la Regla 44.1 (d) de las Reglas de Procedimiento Civil dispone lo siguiente sobre los honorarios de abogados:

> […]
> (d) *Honorarios de abogado.* En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. […][87]

---

[83] 32 LPRA Ap. V, R. 5.1.
[84] 32 LPRA Ap. V, R. 11.1.
[85] 32 LPRA Ap. V, R. 11.3.
[86] *J.T.P. Development Corp. v. Majestic Realty Corp.*, 130 DPR 456, 460 (1992).
[87] 32 LPRA Ap. V, R. 44.1 (d).

El concepto temeridad no está expresamente definido por la Regla 44.1(d) de las Reglas de Procedimiento Civil.[88] La temeridad ha sido definida como:

> [...] una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exorbitante para su peculio.[89]

Existen varias instancias bajo las cuales puede surgir temeridad, a saber: (i) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; (ii) defenderse injustificadamente de la acción; (iii) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; (iv) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad; y, (v) negar un hecho que le conste es cierto a quien hace la alegación.[90] A tales efectos, el propósito de la imposición de honorarios de abogado en casos de temeridad es: "establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito".[91]

La determinación de temeridad es de índole discrecional, por lo que los tribunales apelativos solo debemos intervenir con ella cuando nos enfrentemos a un caso de abuso de discreción.[92] Ahora bien, una vez el tribunal sentenciador concluye que una parte ha

---

[88] *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718 (1987).
[89] *Id.* H. Sánchez, Rebelde Sin Costas, 4(2) Boletín Judicial 14 (1982).
[90] *Blas v. Hosp. Guadalupe*, 146 DPR 267, 335-336 (1998). *Fernández v. San Juan Cement Co., Inc.*, *Id.*
[91] *Andamios de P.R. v. Newport Bonding*, 179 DPR 503, 520 (2010). *Fernández v. San Juan Cement Co., Inc.*, *Id.*
[92] S.*L.G. Flores–Jiménez v. Colberg*, 173 DPR 843, 866 (2008). *Colón Santos v. Coop. Seg. Mult. P.R.*, 173 DPR 170 (2008). *P.R. Oil v. Dayco*, 164 DPR 486 (2005).

sido temeraria, es imperativa la imposición de honorarios de abogado.[93]

**III**

La parte apelante acudió ante este tribunal revisor mediante un recurso de *Apelación* y esboza que el foro primario cometió cinco (5) errores, entiéndase: (i) erró al ignorar todas y cada una de las admisiones judiciales vinculantes para las partes y para el Tribunal, que al momento de dictarse la *Sentencia apelada* eran finales, firmes e inapelables; (ii) erró el al mantener absoluto silencio sobre la prueba anunciada por la apelada, la cual voluntariamente suprimió, al no activar la presunción establecida por la Regla 304 (5) de las Reglas de Evidencia[94]; (iii) erró al declarar Ha Lugar la *Reconvención* instada por la apelada; (iv) erró al imponer a la parte apelante honorarios de abogado, sin una determinación de temeridad; y, por último, que (v) erró en aquilatar prueba que desfiló en juicio y la que fue estipulada en el *ICAJ suplementado*.

El Solar M-18 objeto de esta controversia radica en el área Mar Blanco del Barrio Las Mareas del municipio de Salinas, Puerto Rico. El 7 de abril de 2021, las partes suscribieron un *Contrato de Opción*, mediante el cual la señora Robles Torres concedió a Giomar la opción de adquirir la propiedad por el precio alzado de $30,000.00 dólares. Al Solar M-18 se le realizaron dos (2) mensuras que arrojaron una cabida mayor. En el caso ante nos, no existe controversia en cuanto al precio ni la mensura/cabida del Solar M-18. Además, tampoco existe controversia sobre la fecha de vencimiento original del *Contrato*, es decir, el 6 de julio de 2021.

No obstante, si existía controversia en cuanto a si el *Contrato* se prorrogó, extendió o caducó. El término del *Contrato* conforme a la cláusula uno (1) era de noventa (90) días a partir de la firma del

---

[93] *P.R. Oil v. Dayco, Id.*, 511 (2005).
[94] 32 LPRA Ap. VI, R. 304(5).

*Contrato*, es decir, el 7 de abril de 2021, por lo que vencía originalmente el 6 de julio de 2021, como ya indicamos. Con la firma del *Contrato*, la señora Robles Torres recibió el pago de $15,000.00 dólares. No obstante, los restantes $15,000.00 dólares debían ser pagados al momento en que finalizara el término de la opción y al momento de la firma de la escritura de compraventa.

Coincidimos con la parte apelante cuando expresa que en el presente caso existen unas admisiones judiciales vinculantes para las partes, las cuales fueron producto del descubrimiento de prueba cursado. Empero, en la *Contestación a Requerimiento de Admisiones*, la parte apelante admitió que en el *Contrato* no existe ninguna cláusula que aborde si el término de este podía ser prorrogado o si podía ocurrir una renovación de la obligación, tampoco existía prohibición al efecto.[95] Sin embargo, en la parte de *Otorgamiento y Aceptación del Contrato* dispone que: "Este contrato contiene todos los acuerdos tomados y ninguna de las partes quedará obligada por ninguna cláusula que no esté incluida en este contrato".[96] En la *Contestación a Requerimiento de Admisiones*, la parte apelante admitió que no solicitó prórroga en cuanto al *Contrato* por escrito, bajo la premisa de que no era un requisito.[97] A su vez, el *Contrato* no disponía que pudiese ser enmendado de forma alguna, es decir, ni de manera escrita ni verbalmente.

En lo que respecta a la *Reconvención*, la apelada expuso que instó la acción debido a que por la radicación de la *Demanda* no había podido vender el Solar M-18, a pesar de que presuntamente se le habían acercado varios clientes interesados en el mismo. En la determinación de hecho número trece (13) de la *Sentencia apelada*, el TPI determinó que:

> Según el testimonio de demandada, esta se ha visto
> impedida de vender el solar M-18 y otros solares que

---

[95] Apéndice de la parte apelante, a la pág. 814.
[96] *Id.*, a la pág. 805.
[97] *Id.*, a la pág. 813.

tiene en Las Mareas por la radicación de este caso. Declaró que recibió ofertas para comprar cualquiera de los solares del Sr. Jorge Palau por doscientos mil dólares ($200,000.00) y Rafael Pomales por setenta mil dólares ($70,000.00) respectivamente, los cuales son amigos de la demandada, y de Yanitza Robles Díaz por ciento cincuenta mil dólares ($150,000.00), quien es su sobrina.[98]

No obstante, en la determinación de hecho número catorce (14) el foro primario aclaró que: "Con excepción del solar M-18, no había impedimento para que la demandada pudiera vender los otros solares".[99]

Independiente de las determinaciones de hechos emitidas en la *Resolución* denegando la *Moción en Solicitud de Sentencia Sumaria,* el TPI dispuso sobre cuáles eran las controversias pendientes que requerían la celebración de un juicio para dirimirlas y otorgar el valor probatorio, por estar enmarcadas en elementos subjetivos y de credibilidad. Quiérase decir que, no obstante, la determinación de hechos incontrovertidos, las mismas no operan en el vacío, sino que hay que enmarcarlas dentro de lo que eran las controversias determinadas por el TPI y sobre las cuales se desfiló la prueba. A raíz de ello, debido a que no contamos con una transcripción de la prueba oral, no se nos colocó en posición de variar las determinaciones de hecho emitidas durante el juicio.

Por su estrecha relación, discutiremos el *primer*o, *segundo* y *quinto* señalamiento de error en conjunto. La parte apelante en su *primer* y *quinto* señalamiento de error considera que el foro primario ignoró todas y cada una de las admisiones judiciales vinculantes para las partes y para el Tribunal; y, que erró al aquilatar la prueba desfilada, tomando en consideración que en el caso del título existían unas estipulaciones conforme al *ICAJ suplementado.* No nos convence.  Elaboramos.

---

[98] *Id.,* a la pág. 1625.
[99] *Id.*

Como parte de los trámites procesales seguidos por el foro primario juzgó que, independientemente de las sendas determinaciones de hechos realizadas en virtud de la *Moción en Solicitud de Sentencia Sumaria* presentada por la parte apelante, era necesaria la celebración de un juicio por entender que las controversias determinadas, las cuales contenían elementos subjetivos, por lo que, requerían ser justipreciadas mediante la celebración de un juicio en su fondo. Acentuamos que, el mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que únicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.[100] Cabe señalar, sin embargo, que el mecanismo de sentencia sumaria no es el apropiado para resolver casos en donde hay elementos subjetivos o cuando el factor de credibilidad sea esencial.[101]

Es de ver, además, que, igual situación ocurrió con los hechos estipulados como parte del *ICAJ suplementado*. Bajo el crisol doctrinario, las estipulaciones deben de interpretarse liberalmente y de forma compatible con la intención de las partes con el propósito de hacer justicia.[102] Reiteramos que, la estipulación de un hecho, contrario a la estipulación sobre la autenticación de evidencia, implica el relevo de prueba de ese hecho, por tal razón, los tribunales no debemos dar un hecho por estipulado si ello no surge claramente de lo acordado por las partes.[103]

Insistimos, examinados los autos ante nuestra consideración pudimos constatar que no contamos con una transcripción de la prueba oral. A la luz de todo lo anterior y basándonos en la totalidad

---

[100] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, *supra.*
[101] *Elías y otros v. Chenet y otros, supra. Soto v. Hotel Caribe Hilton, supra. Velázquez Ortiz v. Mun. de Humacao, supra.*
[102] *Rivera Menéndez v. Action Service, supra. Díaz Ayala et. als. v. ELA, supra. Ramos Rivera v. ELA, supra.*
[103] *Rivera Menéndez v. Action Service, Id.*, 443.

del expediente, no vemos razón para variar lo actuado por el tribunal apelado, y juzgamos que previo al juicio no existía una admisión que pudiésemos considerar que dio por enmendado el *Contrato.* Entonces, forzoso es concluir que dichas admisiones no atienden la controversia medular, por lo que no nos mueven a modificar la decisión emitida por el foro apelado. La parte apelante no logró demostrar ante el foro primario que el *Contrato* se hubiese prorrogado o extendido hasta el 16 de julio de 2021.

Por su parte, en el *quinto* error, hay elementos de apreciación de la prueba. No obstante, es menester recordar, que en este caso existían elementos subjetivos que el Tribunal aquilató en el juicio en su fondo, además de juzgar la credibilidad para determinar si en efecto hubo tal prórroga o incluso una novación del *Contrato.* Como ya hemos destacado, no contamos con una transcripción de la prueba oral, por lo que debemos otorgarle al foro primario deferencia respecto a su apreciación de la prueba. Debemos tener presente que, un foro apelativo cuenta solamente con "récords mudos e inexpresivos", por lo que se le debe respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos.[104]

Cónsono con lo anterior expresado, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debemos intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad; (ii) incurrió en un craso abuso de discreción; o, (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[105] Un tribunal de justicia

---

[104] *Autoridad de Acueductos y Alcantarillados de Puerto Rico, supra. Trinidad v. Chade, supra.*
[105] *González Hernández v. González Hernández, supra. Ramírez Ferrer v. Conagra Foods PR, supra. Rivera y otros v. Bco. Popular, supra. Pueblo v. Irizarry, supra. Pueblo v. Maisonave, supra*, 62-63.

incurre en un abuso de discreción cuando: (i) el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (ii) el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o, (iii) no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[106] Es de ver que, cónsono a lo todo lo antes mencionado, no contamos con elementos suficientes para variar la determinación del foro primario puesto a que tras nuestra evaluación como tribunal revisor, tendríamos que quedar convencidos de que el juzgador de los hechos descartó injustificadamente elementos probatorios importantes o que fundamento su criterio solo en testimonios con escaso valor, improbables o increíbles.[107] Esta no es la situación ante nos.

Con relación al alegado absoluto silencio sobre la prueba anunciada por la apelada y presuntamente suprimida voluntariamente, según esbozado en el *segundo* error, no tiene razón la parte apelante. Veamos.

De la *Sentencia apelada* se desprende que, aun cuando existía prueba estipulada por las partes durante la celebración del juicio en su fondo, solo se desfiló prueba sobre alguna prueba documental, no sobre toda. En su *segundo* señalamiento de error, la parte apelante nos invita a que concluyamos que el foro primario guardó silencio en cuanto a la prueba documental anunciada por la parte apelada y que se le debió presumir adversa tras presuntamente no haberse presentado. En el caso ante nuestra consideración no debe existir duda alguna sobre cuál de las partes tenía el peso de la

---

[106] *Pueblo v. Rivera Santiago, supra.*
[107] *C. Brewer P.R., Inc. v. Rodríguez,* 100 DPR 826, 830 (1972).

prueba en este caso. Conforme a la Regla 110 (A) y (B) de las Reglas de Evidencia[108] en este caso el peso de la prueba lo tenía la parte apelante, no la apelada. Si la parte apelante estaba bajo la impresión de que esos documentos le eran favorables, los pudo haber incluido como parte de su prueba para asegurarse de que el Tribunal la recibiera y aquilatara, de admitirse.

Vemos que, la apelada en su turno de preguntas no presentó alguna prueba testimonial tras razonar que le resultaba innecesaria y acumulativa. Precisamos que, según la *Sentencia apelada,* dicha prueba no se refería a la prueba documental, sino a la prueba testimonial. El TPI no hizo ninguna referencia en la *Sentencia apelada* a que se hubiese producido alguna controversia o argumentación sobre las alegadas presunciones en cuanto a prueba documental de la parte apelada. Abona a lo anterior, que, luego de examinar el expediente en este caso, incluyendo, además, el *ICAJ*, y el *suplementado,* concluimos que no existe ninguna prueba documental sobre la cual se hubiese determinado que no sería necesario desfilar prueba. Entiéndase, de las estipulaciones que llegaron las partes en cuanto a los documentos, no surge que fuese innecesario desfilar. Solo se desprende que había prueba estipulada en cuanto a autenticidad y admisibilidad, mas no se desprende que se hubiese estipulado el contenido.[109] Por tanto, coincidimos con el foro primario cuando en la *Sentencia apelada* hizo referencia a la prueba admitida y sobre la cual se desfiló prueba, la cual juzgamos fue justipreciada.[110] Insistimos, que, en atención a todo lo exterior y reiterando que nos encontramos huérfanos de método de reproducción de la prueba oral, forzosamente concluimos que debemos otorgarle deferencia al TPI.

---

[108] 32 LPRA Ap. VI, R. 110 (A) y (B).
[109] Apéndice de la parte apelante, a las págs. 103-104.
[110] *Id.,* a la pág. 1623.

En su *tercer* error, la parte apelante considera que el foro primario incidió al declarar Ha Lugar la *Reconvención* instada por la apelada. No tiene razón. Aunque resulte reiterativo que no contamos con una transcripción de la prueba oral, puntualizamos que no contamos con los elementos para conocer si las cantidades por concepto de sufrimientos y angustias mentales, más los gastos y costas del procedimiento, reclamadas por la apelada fueron impugnadas por la parte apelante durante el juicio en su fondo. En el escrito de *Apelación* la parte apelante aspira a que concluyamos que no se probaron las alegaciones de la *Reconvención.* Nuevamente, para demostrar lo contrario y cónsono a las determinaciones de hecho emitidas por el foro primario, haría falta una transcripción de la prueba oral. En lo que a este aspecto de la *Reconvención* respecta, el TPI, entre sus determinaciones de hechos emitidas en la *Sentencia apelada,* expuso:

> 15. La demandada declaró[,] además[,] que [se] ha visto afectada emocionalmente porque entre ambas familias había lazos de estrecha amistad, que se perdieron por el pleito, que se encuentra triste y deprimida, y que tuvo y tiene pérdidas económicas, ya que ella solo recibe ingresos del seguro social.[111]

Por tal razón, y luego de evaluar las determinaciones de hechos emitidas por el foro primario durante la celebración del juicio en su fondo, debemos dar deferencia a la apreciación de la prueba, razonando que no se ha presentado ninguna de las circunstancias que, a falta de un método de transcripción de la prueba oral, nos muevan a variarla. Forzosamente concluimos que la parte apelante no colocó en posición a este tribunal revisor como para variar las determinaciones de hechos emitidas por el foro primario, como parte de la celebración del juicio.

Por último, en cuanto al *cuarto* señalamiento de error, la parte apelante esbozó que el foro primario erró al imponerle $4,000.00

---

[111] *Id.,* a la pág. 1625.

dólares en honorarios por temeridad, aduciendo que en la *Sentencia apelada* no hubo una determinación de temeridad. No le asiste razón. Veamos. La Regla 44.1 (d) de las Reglas de Procedimiento Civil dispone lo siguiente sobre los honorarios de abogados: "[...] En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda corresponda a tal conducta. [...][112] Ahora bien, este foro solo intervendrá en la determinación de temeridad que realice el TPI, si de nuestra apreciación resulta que hubo abuso de discreción. Por su parte, en lo que a la cuantía respecta, el criterio para determinarla es a base de la razonabilidad. En este caso, no tenemos elementos para variar la determinación del foro primario, no es nuestra apreciación que haya habido un abuso de discreción ni que la cantidad impuesta haya sido irrazonable. En este caso, la parte apelante resultó ser la parte perdidosa, mientras que el foro primario concedió el remedio solicitado vía *Reconvención* a la apelada, a excepción de su reclamación por daños económicos.

**IV**

Por los fundamentos que anteceden, se *confirma* la *Sentencia apelada.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[112] 32 LPRA Ap. V, R. 44.1 (d).